Michael Patrick PAYNE, By and Through his Guardian ad Litem, John Michael PAYNE; John Michael Payne; and Stephanie Payne, Plaintiffs and Appellants,

v.

Garth G. MYERS, M.D.; Joseph P. Kesler, M.D.; the State of Utah and Handicapped Children's Service; and the Division of Health of the State of Utah, Defendants and Respondents.

No. 19218.

Supreme Court of Utah.

Aug. 18, 1987.

Stuart H. Schultz, R. Scott Williams, Salt Lake City, for plaintiffs and appellants.

Arthur H. Nielsen, William C. Quigley, Gary B. Ferguson, Gary D. Stott, Salt Lake City, for Garth G. Myers, M.D.

Francis J. Carney, Stewart M. Hanson, Jr., Stephen J. Sorenson, Salt Lake City, for Joseph P. Kesler, M.D.

Craig L. Barlow, David L. Wilkinson, Salt Lake City, for the State of Utah.

HOWE, Justice:

 Plaintiffs John M. Payne and Stephanie Payne (hereinafter "parents") brought this medical malpractice action seeking damages for "wrongful birth"[1] against Drs. Garth G. Myers and Joseph P. Kesler ("doctors") and their employer, the State of Utah Handicapped Children's Service, and the Division of Health of the State of Utah ("State defendants"). John M. Payne on behalf of Michael P. Payne ("minor plaintiff") joined in the action against the doctors and the State defendants, seeking damages for "wrongful life."[2]

## FACTS

In 1975, the parents gave birth to their first child, Matthew. Shortly thereafter, he began exhibiting signs of an undiagnosed neurological disorder. From November 1976 through the fall of 1977, he was examined and treated by the doctors at the Handicapped Children's Service, an agency of the Utah State Department of Health. The parents allege that the doctors negligently failed to diagnose Matthew's affliction as Pelizaeus-Merzbacher Syndrome, a rare, genetically transmitted, and progressively degenerative neurological disorder that is characterized by widespread demyelination of the brain sheath, causing severe motor disorders and eventually death. The parents further allege that sometime during the fall of 1977, the doctors advised them that they could safely have another child and that they need not worry that the affliction would recur. They assert that had they been advised that a second child would be at risk of being born with the same defect which impaired their first child, they would not have taken that risk.

The parents contend that in reliance on this advice, Stephanie Payne had her obstetrician remove her intrauterine birth control device (IUD) on February 14, 1978, so that she could conceive a second child. On January 27, 1979, she gave birth to Michael, who soon developed signs of the same neurological impairments as his brother, Matthew. A few months after Michael's birth, both children were diagnosed by another physician as having Pelizaeus-Merzbacher Syndrome. Thereafter, the parents and minor plaintiff brought this action against the doctors and the State defendants.

The district court entered summary judgment in favor of the State defendants as to the parents' claim on the ground that they had failed to file a notice of claim against the State within one year as required by Utah Code Ann. § 63–30–12 (1986). The court, however, denied summary judgment in favor of the State defendants as to the minor plaintiff's claim. The court also awarded summary judgment in favor of the doctors as to all claims by all plaintiffs on the ground that a 1978 amendment to Utah Code Ann. § 63–30–4 granted immunity to them for their simple negligence in the performance of their duties as state employees. The district court certified its summary judgment in favor of the doctors and against the parents as final pursuant to Rule 54(b) of the Utah Rules of Civil Procedure to allow the parents to appeal. Their sole contention on appeal is that the 1978 amendment should not bar their suit for wrongful birth against the doctors.

## I.

When reviewing the grant of a motion for summary judgment, the facts are to be

---

1. A "wrongful birth" claim is brought by the parents of a severely defective child against a physician who negligently fails to inform them, in a timely fashion, of an increased possibility that the mother will give birth to such a child, thereby depriving the parents of the choice to make an informed decision as to whether to have a child. *See Smith v. Cote,* 128 N.H. 231, 513 A.2d 341 (1986).

2. A "wrongful life" claim is brought on behalf of a severely defective child against a physician for the physician's negligent failure to inform the parents of the risks of conceiving an impaired child, thereby denying the parents the choice to avoid the child's birth.

liberally construed in favor of the parties opposing the motion, and those parties are to be given the benefit of all inferences which might reasonably be drawn from the evidence. *See Durham v. Margetts,* 571 P.2d 1332, 1334 (Utah 1977). Summary judgment is proper only when the defendants are entitled to it as a matter of law on the undisputed facts. *Barlow Society v. Commercial Security Bank,* 723 P.2d 398 (Utah 1986). In this case, the district court awarded summary judgment in favor of the doctors solely on the immunity provided by the 1978 amendment to Utah Code Ann. § 63–30–4. That section, as amended in 1978, provides in pertinent part: [3]

> The remedy against a governmental entity or its employee for an injury caused by an act or omission which occurs during the performance of such employee's duties ... is, *after the effective date of this act, exclusive of any other civil action* or proceeding by reason of the same subject matter against the employee or the estate of the employee whose act or omission gave rise to the claim, unless the employee acted or failed to act through gross negligence, fraud, or malice.

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but *no employee shall be held personally liable* for acts or omissions occurring during the performance of the employee's duties ... *unless* it is established that the *employee acted or failed to act*

*due to gross negligence, fraud or malice.*

(Emphasis added.) Prior to the 1978 amendment, the doctors as governmental employees had no immunity from suit for their simple negligence. The amended statute became effective on March 30, 1978, *after* the alleged negligent advice had been given by the doctors in the fall of 1977 and *after* Stephanie Payne's IUD was removed in February 1978, but some ten months *before* Michael was born.

The parents contend that they are not subject to the 1978 amendment because their cause of action accrued at the time they received and relied upon the negligent advice of the doctors in 1977 and that the legislature could not thereafter constitutionally impair their vested right to that cause of action. The doctors, on the other hand, argue that the causes of action of the parents, if indeed they have one at all, did not accrue until the birth of Michael or, at the very earliest, at the time he was conceived. Both of those events postdated the effective date of the amendment.

Generally, at common law, one who suffers injury to his person or property because of the negligence of another has a right of action in tort. 65A C.J.S. *Negligence* § 175, at 305 (1966). Under traditional tort analysis, the plaintiff must establish the existence of a duty, the breach of which proximately causes injury to the plaintiff. In an action for wrongful birth,[4] the plaintiff has the burden of establishing these same elements.

■ Assuming, but not deciding, that Utah jurisprudence should recognize an action for wrongful birth,[5] it is necessary to

---

**3.** In 1983, the legislature again amended section 63–30–4 to extend immunity to government employees for their gross negligence. *See* 1983 Utah Laws ch. 129, § 3 (codified at Utah Code Ann. § 63–30–4 (1986)).

**4.** In 1983, the legislature enacted the Utah Wrongful Life Act, Utah Code Ann. §§ 78–11–23 through –25. Inasmuch as the parents' claims arose prior to the effective date of that Act, its provisions are inapplicable to the instant case, and we do not here address the effect that legislation may have on subsequent actions.

**5.** Although the action for wrongful birth is comparatively new in the history of tort law, many

states have recognized wrongful birth causes of action. *Phillips v. United States,* 508 F.Supp. 544, 545 n. 1 (D.S.C.1981); *Smith v. Cote,* 128 N.H. 231, 513 A.2d 341 (1986); *Goldberg v. Ruskin,* 128 Ill.App.3d 1029, 84 Ill.Dec. 1, 471 N.E.2d 530 (1984); *Fassoulis v. Ramey,* 450 So.2d 822, 824 (Fla.1984); *Blake v. Cruz,* 108 Idaho 253, 698 P.2d 315 (1984); *Harbeson v. Parke-Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483 (1983); *Sherlock v. Stillwater Clinic,* 260 N.W.2d 169 (Minn.1977); *Becker v. Schwartz,* 46 N.Y.2d 401, 386 N.E.2d 807, 813, 413 N.Y.S.2d 895 (1978); *Troppi v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511 (1971). Today, there is "quite general agreement" that some recovery should be

determine precisely when the parents' cause of action accrued.

> The word "accrue" in connection with the accruing of a cause of action means becoming complete so that the aggrieved [parties] can begin and prosecute [their] action.... The true test is to ascertain the time when the plaintiff[s] could first have maintained [their] action to a successful result. A cause of action accrues when the person in whose favor it arises is first entitled to institute a judicial proceeding for the enforcement of his rights.

1 Am.Jur.2d *Actions* § 88 (1962). In traditional negligence cases, a cause of action accrues when all the elements necessary to maintenance of a lawsuit are present; the time of occurrence of the last of those elements is made the critical point of initial inquiry. *Hunter v. Knight, Vale & Gregory,* 18 Wash.App. 640, 571 P.2d 212 (1977).

In this case, we have four possibilities as to when the parents' cause of action accrued: (1) at the time they received the negligent advice; (2) at the time Mrs. Payne had her IUD removed in reliance on that advice; (3) at the time Michael was conceived; or (4) upon Michael's birth. We will analyze each of these four possibilities. First, we look at the alleged negligent advice of the doctors. The increased ability of health care professionals to predict and detect the presence of fetal defects and the capacity to assess risk factors associated with unborn and even unconceived children have considerably enhanced the importance of genetic counseling. It is now possible for prospective parents to know, well in advance of birth, of the risk of congenital defects in children not yet conceived. Courts accordingly have recognized that physicians who perform testing and provide advice relevant to the constitutionally guaranteed procreative choice, "or whose actions could reasonably be said to give rise to a duty to provide such testing or advice," *Smith v. Cote,* 128 N.H. 231, 513 A.2d 341, 346 (1986), have a corresponding obligation to adhere to reasonable standards of professional performance.

Assuming that the facts alleged by the parents are true, did their cause of action accrue when the doctors mistakenly advised them? We conclude that it did not. Although there was a duty to the parents which the doctors may have breached, at that time the parents had no injury as a result of the breach. If the parents had been unsuccessful in conceiving a second child, no cause of action could have arisen. The parents may have had negligent advice, but nothing more.

Second, did the parents' cause of action accrue at the time Mrs. Payne had her IUD removed? They contend that they were injured when, in reliance on the doctors' advice, they incurred expenses for the removal of Mrs. Payne's IUD. They argue that they have a vested right to their negligence cause of action that "relates back" to the date of the earlier "injury" (removal of the IUD), even though that injury was different in nature from the wrongful birth for which they now claim relief, because both injuries are a consequence of the same allegedly negligent conduct. Again, we find no merit to the parents' argument. The removal of the IUD was not an injury in and of itself. Because of its contingent nature at that time, the claim had not reached the point of definiteness traditionally associated with a "vested" cause of action. Mrs. Payne may not have conceived a child at all; thus the parents' reliance on the allegedly negligent advice of the doctors would not have produced an injury.

Third, did the parents suffer injury at the time of Michael's conception or, fourth, at the time of his birth? Again, Michael's conception enhances the possibility of injury. However, had Mrs. Payne miscarried or had Michael been born with no genetic defect, there would still have been no cause of action for wrongful birth. By the very nature of their claim, i.e., an action for the

permitted in wrongful birth cases. *See* W. Keeton, D. Dobbs, B. Keeton & D. Owen, *Prosser and Keaton on the Law of Torts* § 55, at 371 (5th ed. 1984); *see also* Annot., 83 A.L.R.3d 15 (1978 & Supp.1986). North Carolina refuses to allow recovery. *See Azzolino v. Dingfelder,* 315 N.C. 103, 337 S.E.2d 528 (1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986).

wrongful birth of their child, it is axiomatic that the *injury* to the parents could not have occurred prior to Michael's birth. The injury in a wrongful birth claim cannot precede the birth of the child. *See Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984).

Under this analysis, the parents' cause of action could not have accrued earlier than ten months after the effective date of the 1978 amendment to section 63–30–4. Since there was no allegation of gross negligence, fraud, or malice, that section precludes the personal liability of the doctors.

## II.

■ The parents contend that granting immunity for the doctors' negligence is to apply the amendment retroactively. In *Silver King Coalition Mines v. Industrial Commission*, 2 Utah 2d 1, 268 P.2d 689 (1954), this Court defined a retroactive law as one "which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already past." The 1978 amendment provides: "The remedy against a governmental entity or its employee ... is, after the effective date of this Act, exclusive of any other civil action...." It is clear that the legislature carefully limited application of the amendment to actions commenced *after* its effective date. Thus, the amendment is applicable to the parents' suit against the doctors, and the question arises whether this application impairs any vested right of the parents. This Court has held that a vested right of action is a property right protected by the due process clause. *Spanish Fork Westfield Irrigation Co. v. District Court*, 99 Utah 527, 104 P.2d 353 (Utah 1940). Recently, the court reaffirmed the rule that

> once a cause of action under a particular rule of law accrues to a person by virtue of an injury to his rights, that person's interest in the cause of action and the law which is the basis for a legal action becomes vested, and a legislative repeal of the law cannot constitutionally divest the injured person of the right to litigate the cause of action to a judgment.

*Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 676 (Utah 1985); *see also* 16A C.J.S. *Constitutional Law* § 260 (1984) (causes of action that have not yet accrued are not vested). The general rule is that a cause of action for negligence does not accrue or vest until the plaintiff has suffered injury as a result of negligent conduct. *See Mathis v. Eli Lilly & Co.*, 719 F.2d 134, 141 (6th Cir.1983); *Burmaster v. Gravity Drainage Dist. No. 2*, 366 So.2d 1381, 1387 (La.1978); *see also Berry v. Beech Aircraft Corp., supra* (cause of action does not vest until there is an injury to a right).

The parents did not suffer injury before Michael's birth. A cause of action had not accrued, and therefore, they had no vested rights prior to that time. Since application of the amendment did not affect a vested right, it had no retroactive effect.

■ The parents' final contention is that the 1978 amendment is unconstitutional because it contravenes article I, section 11 of the Utah Constitution, which provides, inter alia, that "every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law...." The parents argue that they were injured by the negligent acts of the doctors and that they had a cause of action against them at common law which the amendment stripped from them. The amendment to section 63–30–4 did not leave the parents without a remedy for their injury. *See Stewart v. Houk*, 127 Or. 589, 271 P. 998, *reh'g denied*, 127 Or. 597, 272 P. 893 (1928) (legislature may modify the remedy and the form of procedure and attach conditions precedent to the exercise of the right). Parents had a remedy against the state defendants for injuries arising out of the negligent acts of State employees, but the parents failed to give notice of their claim to the State within one year as required by section 63–30–12. Had they done so, they might have obtained a judgment against the State. Utah Code Ann. § 63–30–34 (1986). We conclude that the parents were not denied the guarantees of article I, section 11 because they still had an opportunity to seek redress in the courts.

### III.

We have examined other contentions made by the parents as to why the 1978 amendment should not bar their action, but find those contentions also to be without merit.

The judgment of the district court is affirmed.

HALL, C.J., STEWART, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.