2002 UT 6

**Paul MILLER and Kathy Miller, Plaintiffs and Appellants,**

v.

**USAA CASUALTY INSURANCE COMPANY and Kenneth Riddle, Defendants and Appellees.**

No. 20000268.

Supreme Court of Utah.

Jan. 11, 2002.

Rehearing Denied February 25, 2002.

Lynn B. Larsen, Salt Lake City, for plaintiffs.

Stuart H. Schultz, Peter R. Barlow, Salt Lake City, for defendants.

RUSSON, Associate Chief Justice.

¶ 1 Plaintiffs Paul and Kathy Miller (collectively, "the Millers") appeal the denial of their motion to either set their unresolved claims for trial or provide another forum for the resolution of those claims. Additionally, the Millers appeal the district court's refusal to confirm an appraisal award in their favor. We reverse and remand.

## BACKGROUND

¶ 2 The Millers contracted with USAA Casualty Insurance Company ("USAA") to insure their family home located in Parowan, Utah. According to section one of the written insurance contract, USAA agreed to insure the Millers' home for physical damage. However, section one subjected property damage claims to several conditions. One such condition was an appraisal clause, that provided:

> If [the Millers] and [USAA] do not agree on the amount of loss, either party can demand that the amount of the loss be determined by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.
>
> . . . .
>
> The appraisers will then set the amount of loss. If they submit a written report of any agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss.

¶ 3 On or about June 14, 1996, the water heater located in the basement of the Miller family home burst, resulting in water damage to the home. The Millers then made a claim under their insurance contract with USAA to cover the cost of repairs. USAA retained Kenneth Riddle ("Riddle"), an independent adjuster, to estimate the amount of damage to the Millers' basement. Riddle, after conducting two inspections of the Millers' home, concluded that there was only minor damage to the basement. The Millers

disagreed with Riddle's assessment of the extent of damage.

¶ 4 To resolve the dispute, the Millers filed suit against USAA on February 10, 1997 ("*Miller I* "), seeking recovery for physical damage to their home under the terms of the insurance contract ("contractual claim"). In addition, the Millers sought recovery on various extra-contractual grounds. Specifically, the Millers sought recovery for (1) loss of use of the home, (2) mental and emotional distress, (3) physical illness [1] and distress, (4) frustration and embarrassment, (5) infliction of emotional distress, (6) bad faith, (7) punitive damages, and (8) other special, general, and consequential damages ("extra-contractual claims").

¶ 5 On March 24, 1997, USAA moved to dismiss the *Miller I* complaint, invoking the appraisal clause and contending that the "dispute should be resolved via the appraisal process." On August 21, 1997, the *Miller I* district court dismissed the complaint in its entirety, relying upon the appraisal clause and stating that "the parties are bound by contract to settle the dispute in this case by appraisal."

¶ 6 Nevertheless, the parties did not proceed to appraisal pursuant to the court's ruling because the parties could not agree about which of the Millers' claims were to be appraised. The Millers asserted that all the *Miller I* claims must be appraised. USAA, however, refused to agree to appraisal of any claim other than the Millers' contractual claim for physical damage to the Millers' home. USAA also refused to agree to allow the extra-contractual claims to be determined after the contractual claim was resolved by appraisal.

¶ 7 On December 2, 1997, the Millers moved for reinstatement so that the *Miller I* court could resolve the parties' dispute over the scope of appraisal. The *Miller I* court

denied this motion on January 16, 1998. Then, on January 23, 1998, the Millers moved the *Miller I* court to reconsider the court's denial of the motion to reinstate. Again, the court denied the motion, stating: "The suit [that] plaintiffs seek to resurrect has no claim relating to the interpretation of the appraisal clause. If there is a viable claim of that type, it may be grounds for a separate suit. . . ."

¶ 8 Because the *Miller I* court refused to address the scope of the appraisal clause and refused to specifically address the extra-contractual claims, the Millers filed a second action on February 27, 1998 ("*Miller II* ").[2] In their complaint initiating *Miller II*, the Millers named both USAA and Riddle as defendants (collectively, "USAA defendants") and sought declaratory judgment regarding the scope of the appraisal clause. In addition, the Millers asserted the following claims: (1) bad faith by USAA; (2) breach of contract and fiduciary duty by USAA; (3) intentional infliction of emotional distress by both USAA defendants; and (4) breach of duty by both USAA defendants with respect to carrying out the water damage investigation.[3]

¶ 9 On July 15, 1998, the USAA defendants moved to dismiss these claims based on the doctrine of res judicata, arguing that those counts were "entirely based on the same causes of action as" the *Miller I* extra-contractual claims. On August 10, 1998, the Millers moved for partial summary judgment on their request for declaratory judgment with respect to the scope of appraisal.

¶ 10 On November 25, 1998, the district court granted the USAA defendants' motion to dismiss the extra-contractual claims, concluding that the August 21, 1997, order dismissing *Miller I* constituted a final judgment on the merits and, thus, those claims were precluded by res judicata and the appraisal

---

1. The Millers alleged that physical illnesses were occasioned by molds and other pathogenic organisms thriving in the Millers' basement as a result of the water.

2. This is not a case of a plaintiff seeking two bites of the apple. Instead, this is one continuous case, although two complaints were filed and two judges presided.

3. Although these claims are not exactly identical to the *Miller I* extra-contractual claims, we also refer to these claims as the extra-contractual claims for convenience because they are substantially similar to the *Miller I* extra-contractual claims and our analysis is unaffected by referring to them as such.

agreement. The *Miller II* court also ruled in its November 25, 1998, order that the appraisal panel should exercise its discretion to determine the scope of appraisal. The court explained:

> [T]he ... appraisal clause [should] be construed to allow the appraisers and the umpire to consider *all* losses claimed by the [Millers] resulting from the 1996 water heater burst which flooded [the Millers'] home. Furthermore, the court declares that assessment of such loss shall include *all* damages suffered by [the Millers] from the broken water heater in the most general sense, including but not limited to actual losses, expenses, decrease in value or resources or increase in liabilities, depletion or depreciation or destruction of value, deprivation, ruin, shrinkage in value of estate or property, or any other loss stemming from the water heater burst which the appraisers and umpire, *in their discretion,* decide to consider.

(Last emphasis added.) Finally, the district court ordered that after the appraisers and umpire (collectively, "appraisal panel") appraised the loss, either party could appeal the appraisal panel's determination to the *Miller II* district court within twenty days of the panel's decision.

¶ 11 Despite the court's ruling, the parties again disputed which claims the appraisal panel would consider. As a result, the Millers moved to alter or amend the November 25, 1998, order, allegedly seeking clarification regarding the scope of appraisal. The district court denied that motion on January 22, 1999, stating that "it [was] premature to involve the court before the appraisers and umpire have had the opportunity to perform their duties."

¶ 12 Accordingly, the matter proceeded to appraisal. The parties argued to the appraisal panel their respective contentions concerning the scope of appraisal. On December 17, 1999, the appraisal panel issued a limited appraisal award. In the award, the panel addressed only the contractual claim,

determining the amount of property damage to the Millers' home to be $40,880. However, exercising the discretion the district court afforded it, the panel explicitly refused to address any of the extra-contractual claims. The appraisal panel explained:

> The panel as a whole is neither prepared nor willing to address extra-contractual claims (e.g., bad faith, punitive damages, emotional distress, etc.) unless specifically directed by the Court to do so. The panel as a whole is generally hesitant to embark on the laborious task of analyzing the extra-contractual claims, and feels unqualified to do so.
>
> However, the panel agrees that the [USAA defendants] cannot avoid having [the Millers'] claims heard by one body or another. It is the intent of this panel to follow any procedure that would allow the [Millers] to preserve any properly brought claims. The panel will take any action to preserve those causes of action by decision of another tribunal.

¶ 13 After the panel issued its award, the Millers demanded that USAA pay the award before December 25, 1999. USAA promptly paid it on December 22, 1999.[4] On December 27, 1999, the Millers filed a motion with the *Miller II* court to "confer on the forum and schedule for resolving" the extra-contractual claims. Then, on January 18, 2000, the Millers also moved to confirm the appraisal panel's determination.

¶ 14 On March 10, 2000, the district court denied both motions. First, the district court held that the appraisal panel's determination was final, and thus precluded the extra-contractual claims. Accordingly, the court denied the motion to confer on the forum and schedule for resolution of those claims. The court held:

> [The extra-contractual claims are] not properly before this court, as they have previously been dismissed both in *Miller I* and again in *Miller II* as final judgments on the merits. The [appraisal panel] having performed their duties and exercised

---

4. USAA paid the appraisal panel's award before final judgment was ever entered in the case. Neither party argued that the parties signed a release in connection with USAA's payment.

That payment was made prematurely of USAA's own volition, and USAA was not required to make the payment when it did.

their discretion, and made an award for damages found to be a loss covered under the policy, this matter is now concluded and there are no pending claims to be further considered[.]

Next, regarding the Millers' motion to confirm the appraisal panel's determination, the district court denied the motion "on the grounds that the loss awarded has been paid in full and there is no reason to affirm it and enter a judgment on the same." Thirteen days later, on March 23, 2000, the Millers filed a notice of appeal, notifying the USAA defendants of the Millers' appeal of the March 10, 2000, order.

¶ 15 On appeal, the Millers argue that the *Miller II* district court erred by denying the Millers' motion for conference, effectively foreclosing resolution of the extra-contractual claims, and by refusing to confirm the limited appraisal award. The Millers also claim they are entitled to attorney fees.

¶ 16 In response, the USAA defendants assert that this court lacks jurisdiction over this appeal, that the *Miller II* district court properly denied the Millers' motion for conference, that the district court properly denied the Millers' motion to confirm the appraisal award, and that the Millers' request for attorney fees should be denied.

¶ 17 Before we address any issues on appeal, we must first determine whether we have jurisdiction to reach the substantive issues. If we have jurisdiction, the issues on appeal for our determination are (1) whether the district court erred in dismissing the Millers' extra-contractual claims, (2) whether the district court should have confirmed the limited appraisal award, and (3) whether the Millers are entitled to attorney fees.

## STANDARD OF REVIEW

¶ 18 This court is the exclusive judge of its own jurisdiction, *First Nat'l Bank of Hailey, Idaho v. Lewis*, 13 Utah 507, 509, 45 P. 890, 891 (1896), and its determination of whether it has jurisdiction to hear an appeal is a question of law. *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572. Specifically, the jurisdictional question in this case is predicated upon whether an order is final and appealable, which is a question of law. *Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099, 1100 (Utah 1991).

¶ 19 In this case, whether the courts below erred in dismissing the extra-contractual claims depends on the proper interpretation of the insurance contract and whether res judicata was properly granted. A trial court's interpretation of a contract is a question of law, which we review for correctness, *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69, ¶ 6, 983 P.2d 575. In addition, a district court's "determination of whether res judicata bars an action presents a question of law," which we review for correctness. *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 17, 16 P.3d 1214.

## ANALYSIS

### I. JURISDICTION

¶ 20 As a threshold matter, we must determine if we have jurisdiction to hear this appeal. *Thomas v. Lewis*, 2001 UT 49, ¶ 13, 26 P.3d 217. If we lack jurisdiction, we must dismiss. *See Bradbury v. Valencia*, 2000 UT 50, ¶ 8, 5 P.3d 649 (citing *A.J. Mackay Co. v. Okland Constr. Co.*, 817 P.2d 323, 325 (Utah 1991)).

¶ 21 We have jurisdiction to hear this appeal only if the Millers filed a timely notice of appeal. Utah R.App. P. 3(a); *see also Gorostieta v. Parkinson*, 2000 UT 99, ¶ 19, 17 P.3d 1110; *Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶ 5, 2 P.3d 447. To be timely, a party must file its notice of appeal "within 30 days after the date of entry of the judgment or order appealed from." Utah R.App. P. 4(a); *see also Ellis v. Swensen*, 2000 UT 101, ¶ 22, 16 P.3d 1233. The USAA defendants assert that we lack jurisdiction because either (1) the Millers filed their notice of appeal more than thirty days after the final order in this case was entered, or (2) the Millers filed their notice of appeal more than thirty days after the twenty-day period to appeal the appraisal award expired.

### A. Final Order of Miller II

¶ 22 We have jurisdiction over an appeal only if the notice of appeal was filed within

thirty days of a final order or judgment, Utah R.App. P. 3(a), 4(a), because we "cannot consider an appeal in the absence of a final order." *Ahlstrom v. Anderson*, 728 P.2d 979, 979 (Utah 1986); *see also Loffredo v. Holt*, 2001 UT 97, ¶ 10, 37 P.3d 1070; *Ellis*, 2000 UT 101 at ¶ 31, 16 P.3d 1233; *Gen. Motors Acceptance Corp. v. Martinez*, 712 P.2d 243, 244 (Utah 1985). In this case, the Millers claim that they are appealing from the March 10, 2000, order as a "final order" under Utah Rule of Appellate Procedure 3(a). However, the USAA defendants assert that the January 22, 1999, order was the final order in this case. To determine whether the Millers' notice of appeal was timely, we must decide which order constituted the final order.

▌ ¶ 23 A final order or judgment " 'must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case.' " *Bradbury*, 2000 UT 50 at ¶ 9, 5 P.3d 649 (quoting *Kennedy v. New Era Indus., Inc.*, 600 P.2d 534, 536 (Utah 1979) (emphasis omitted)). In other words, to be a final judgment, the order "must end the controversy between the litigants." *Loffredo*, 2001 UT 97 at ¶ 12, 37 P.3d 1070. When claims remain pending, an order is not final. *Bradbury*, 2000 UT 50 at ¶ 11, 5 P.3d 649; *see also Martinez*, 712 P.2d at 244. Hence, a court order compelling appraisal of the parties' claims pursuant to an appraisal clause in a contract is not a final judgment and is not immediately appealable[5] because the claims remain pending between the parties and the controversy between the litigants is perpetuated. *See Wiepking v. Prudential–Bache Sec., Inc.*, 940 F.2d 996, 999 (6th Cir.1991); *Pioneer Props., Inc. v. Martin*, 776 F.2d 888, 890 (10th Cir.1985); *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 977 P.2d 769, 774–75 (1999); *Golden Lodge No. 13 v. Easley*, 916 P.2d 666, 667 (Colo.Ct.App.1996); *Gholston v. Cypress Prop. & Cas. Co.*, 789

So.2d 547, 548 (Fla. 3 DCA 2001) (per curiam); *McGourty v. Pa. Millers Mut. Ins. Co.*, 704 A.2d 663, 665 (Pa.Super.Ct.1997); *Cade v. Zions First Nat'l Bank*, 956 P.2d 1073, 1080 (Utah Ct.App.1998).

▌ ¶ 24 The January 22, 1999, order was not a final judgment because it required the parties to appraise their claims. In that order, the district court specifically denied the Millers' motion to alter or amend the November 25, 1998, order in which the district court ordered the parties to proceed to appraisal. Accordingly, even after the district court issued the January 22, 1999, order, all of the Millers' claims were still pending, viable, and cognizable pursuant to that order, albeit in front of an appraisal panel. Thus, the January 22, 1999, order failed to dispose of the Millers' claims on their merits and did not end the controversy between the litigants.

▌ ¶ 25 Conversely, the March 10, 2000, order was a final order because it disposed of all the Millers' claims and effectively ended the controversy between the litigants. It was the first order that decisively eliminated the Millers' opportunity to have their extra-contractual claims resolved. All other orders antedating the March 10, 2000, order failed to terminate the controversy between the parties because those orders either referred all of the Millers' claims to appraisal for resolution or otherwise left the extra-contractual claims outstanding and unresolved.

### B. Appeal Within Twenty Days of Appraisal Award

¶ 26 In the November 25, 1998, order, the *Miller II* district court stated that according to Utah Code section 78–31a–15, any calculation of loss by the appraisal panel could be appealed to the district court for modification within twenty days after the panel issued its award. On December 17, 1999, the appraisal

---

**5.** We have previously held that the plain meaning of section 78–31a–19(1) of the Utah Arbitration Act provides that a party may appeal an order *denying a motion to compel arbitration*, regardless of whether the order is a final judgment. *Pledger v. Gillespie*, 1999 UT 54, ¶ 17, 982 P.2d 572. Our holding in *Pledger* does not violate the final judgment rule because "orders and judg-

ments that are not final can be appealed if such appeals are statutorily permissible." *Bradbury*, 2000 UT 50 at ¶ 12, 5 P.3d 649. However, an order compelling appraisal is not appealable before a final judgment is entered because the statute is explicitly limited to denial of motions to compel arbitration. Utah Code Ann. § 78–31a–4(1) (1996).

panel issued the limited appraisal award, setting the amount of the Millers' contractual claim loss at $40,880, but declining to resolve the extra-contractual claims. The USAA defendants argue that because the Millers failed to appeal the appraisal panel's determination to the district court within twenty days after the appraisal panel issued the award, the appraisal award itself became a final judgment, requiring the Millers to file their notice of appeal within thirty days after the twenty-day appeal period expired.

¶ 27 The appraisal award, irrespective of whether the Millers appealed it to the district court, did not constitute a final judgment, and the Millers were under no duty to appeal from that award to this court. Because the appraisal panel declined to address the extra-contractual claims, those claims remained unresolved, and thus, the appraisal panel's determination did not "end the controversy between the litigants." *Loffredo,* 2001 UT 97 at ¶ 12, 37 P.3d 1070.

¶ 28 Nevertheless, the Millers timely appealed the limited appraisal award by filing the motion for conference. Specifically, the Millers moved to "confer on the forum and schedule for resolving" their extra-contractual claims. This motion was tantamount to an appeal of the panel's refusal to resolve the extra-contractual claims. The Millers' requested remedy—a forum for resolution of the extra-contractual claims—is indistinguishable from the remedy the Millers would have sought by a formal appeal to the district court. The Millers had no need to appeal the panel's determination of the amount of the contractual claim loss. Indeed, the Millers moved the court to confirm that award. To the extent that the USAA defendants argue that the Millers should have filed a formal appeal rather than a motion for conference, they ask us to elevate and exalt form over substance, which we refuse to do. *See Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.,* 925 P.2d 941, 947 (Utah 1996).

¶ 29 The Millers' motion for conference was filed just four days after the appraisal panel issued its limited appraisal award, well within the twenty-day period allotted for appeal to the district court. The district court denied that motion on March 10, 2000. Because the March 10, 2000, order completely disposed of all the Millers' claims and appeals to the district court, we conclude that it was the *Miller II* final order.

¶ 30 Because we conclude that the March 10, 2000, order was the final order in *Miller II,* rule 4(a) of the Utah Rules of Appellate Procedure required the Millers to file their notice of appeal within thirty days of March 10, 2000, to properly initiate this appeal. The Millers filed their notice of appeal on March 23, 2000, rendering the notice timely and establishing our jurisdiction to hear this appeal.

## II.  APPRAISAL AND ARBITRATION

¶ 31 Both parties have cited the Utah Arbitration Act (the "Act"), Utah Code Ann. §§ 78–31a–1 to –20, on which the courts below relied in making their rulings, in support of their respective arguments concerning the appraisal clause. Specifically, both parties present their arguments to this court as if the appraisal clause is tantamount to an arbitration clause. Accordingly, before we address the merits of the issues on appeal, we must determine whether an appraisal clause is essentially an arbitration clause to which the Act applies.

### A.  Arbitration

¶ 32 Arbitration is "[a] method of dispute resolution involving one or more neutral third parties ... whose decision is binding." *Black's Law Dictionary* 100 (7th ed.1999); *see also Reed v. Davis County Sch. Dist.,* 892 P.2d 1063, 1065 (Utah Ct.App. 1995); 6 C.J.S. *Arbitration* § 1 (1975). Specifically, an arbitration is a broad, "quasi-judicial proceeding, complete with formal hearings, notice to parties, and testimony of witnesses." *Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1062 (5th Cir. 1990). In Utah, arbitration is governed by the Act, which delineates the rights of the parties in arbitration and sets forth the procedure for the courts and the arbitrators to follow. Utah Code Ann. §§ 78–31a–1 to –20 (1996).

¶ 33 Under the Act, parties can agree to arbitrate any controversy. *Id.* § 78–31a–3. Consequently, if a "party show[s] the existence of an arbitration agreement," then the court "shall order the parties to arbitrate." *Id.* § 78–31a–4(1). However, a court may only compel arbitration of issues that are within the "scope of the matters covered by the agreement." *Id.* The arbitration agreement defines the scope of the controversy to be arbitrated. *Pac. Dev., L.C. v. Orton,* 2001 UT 36, ¶ 13, 23 P.3d 1035.

¶ 34 Once a court compels arbitration, the court must stay the action or proceeding involving the issue or issues subject to arbitration. Utah Code Ann. § 78–31a–4(3) (1996). According to the order compelling arbitration, an arbitration hearing is then held. *Id.* § 78–31a–7. At that hearing, each party may present evidence and examine witnesses. *Id.* Evaluating the evidence, arbitrators then make an award resolving the issues presented to them. *Id.* § 78–31a–10. The arbitration award is binding and enforceable in court. *Id.* § 78–31a–12; *see also Reed,* 892 P.2d at 1065.

### B. Appraisal

¶ 35 Although appraisal may be used as another form of alternative dispute resolution, it is not arbitration. Appraisal, in a general sense, is defined as the "determination of what constitutes a fair price; valuation; estimation of worth." *Black's Law Dictionary* 97 (7th ed.1999). An appraisal is an informal, independent investigation conducted by individuals who "base their decisions on their own knowledge." *Teachworth,* 898 F.2d at 1062. An appraisal is conducted "without hearing or judicial inquiry." 6 C.J.S. *Arbitration* § 3 (1975). In addition, unlike arbitration, "appraisal ordinarily settles only a subsidiary or incidental matter rather than the main controversy as does an arbitration award." *Id.; see also St. Paul Fire & Marine Ins. Co. v. Wright,* 97 Nev. 308, 629 P.2d 1202, 1203 (1981) ("An appraiser's power generally does not 'encompass the disposition of the entire controversy between the parties ... [but] extends merely to the resolution of the specific issues of actual cash value and the amount of loss.' " (quoting *In re Delmar Box Co.,* 309 N.Y. 60, 127 N.E.2d 808, 811 (1955))).

¶ 36 Further, unlike an arbitration award, an appraisal determination is not necessarily binding and enforceable in court. The appraisal determination is either evidence to be considered by the trial court or an award to be enforced, depending upon the contract terms.

¶ 37 Because of the intrinsic differences between arbitration and appraisal, we conclude that neither the Act nor our case law addressing arbitration agreements directly applies to appraisal.

### III. DUE PROCESS AND OPEN COURTS

¶ 38 The paramount issue in this appeal is whether the district court erred by dismissing the extra-contractual claims. Parties to a suit, subject to all valid claims and defenses, are constitutionally entitled to litigate any justiciable controversy between them, i.e., they are entitled to their day in court. Both the due process clause of article I, section 7 and the open courts provision of article I, section 11 of the Utah Constitution guarantee that litigants will have this "day in court." *Jenkins v. Percival,* 962 P.2d 796, 799 (Utah 1998) ("Even the most limited reading of [the open courts] provision guarantees a day in court to all parties ... in disputed insurance claims."); *Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 675 (Utah 1985) ("The clear language of the [open courts provision] guarantees *access* to the courts and a judicial procedure that is based on fairness and equality." (emphasis added)); *Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 657 P.2d 1293, 1296 (Utah 1982) (holding that due process clause dictates that claimants have day in court). Article I, section 7 provides:

No person shall be deprived of life, liberty or property, without due process of law.

Utah Const. art. I, § 7. Further, article I, section 11 provides:

All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be ad-

ministered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

*Id.* § 11. This constitutional right to a day in court is the "right and opportunity, in a judicial tribunal, to litigate a claim, seek relief, or defend one's rights." *Black's Law Dictionary* 402 (7th ed.1999). The analysis to determine whether the Millers were denied their day in court is the same under both the open courts provision and the due process clause. However, the due process clause is applicable to the case at bar only if the Millers were deprived of either life, liberty, or property without due process of law. Therefore, we first address whether the Millers were deprived of either life, liberty, or property, and then determine whether the district court afforded the Millers an opportunity to litigate their claims.

### A. Property Interest

¶ 39 We have previously held that under the due process clause, individuals cannot be deprived of their right to pursue legal claims—such as the extra-contractual claims here, which are a form of property—without due process of law. In *McGrew v. Industrial Commission,* we stated:

"The words *'life,' 'liberty,'* and *'property'* are constitutional terms, and are to be taken in their broadest sense. They indicate the three great subdivisions of all civil right. The term 'property,' in this clause, embraces all valuable interests which a man may possess *outside of himself;* that is to say, outside of his life and liberty. It is not confined to mere tangible property but extends to every species of *vested right.*"

96 Utah 203, 208, 85 P.2d 608, 610 (1938) (last emphasis added) (quoting *Campbell v. Holt,* 115 U.S. 620, 631, 6 S.Ct. 209, 29 L.Ed. 483 (1885) (Bradley, J., dissenting)).

¶ 40 Causes of action or claims that have accrued under existing law are

vested property rights just as tangible things are property. *See Payne v. Myers,* 743 P.2d 186, 190 (Utah 1987) ("This [c]ourt has held that a vested right of action is a property right protected by the due process clause."); *Spanish Fork W. Field Irrigation Co. v. Dist. Court,* 99 Utah 527, 544, 104 P.2d 353, 360 (1940) (stating that a " 'vested right of action is property in the same sense [that] tangible things are property' " (citation omitted)); *Buttrey v. Guaranteed Sec. Co.,* 78 Utah 39, 51, 300 P. 1040, 1045 (1931) (holding that cause of action under blue sky law was "in the nature of a property right"); *Halling v. Indus. Comm'n,* 71 Utah 112, 122, 263 P. 78, 81 (1927) (indicating that denial of vested right of action would violate due process clause). Here, the Millers' extra-contractual claims, and their resulting vested property interest in those claims, accrued when the USAA defendants allegedly injured the Millers. *Payne,* 743 P.2d at 190. Thus, the extra-contractual claims are vested rights of action that are "property right[s] protected by the due process clause." *Id.*

### B. Day in Court

¶ 41 The open courts provision guarantees, at the very least, "that courts shall be open[, affording] a day in court to all parties." *Jenkins,* 962 P.2d at 799. Similarly, the due process clause, at the very least, requires that every claimant "be afforded his 'day in court.' " *Celebrity Club,* 657 P.2d at 1296; *see also Christiansen v. Harris,* 109 Utah 1, 6–8, 163 P.2d 314, 316–17 (1945). When ensuring litigants have received due process of law, our policy is to " 'resolve doubts in favor of permitting parties to have their day in court on the merits of a controversy.' " *Celebrity Club,* 657 P.2d at 1296 (quoting *Carman v. Slavens,* 546 P.2d 601, 603 (Utah 1976)).

¶ 42 At a minimum, a day in court means that each party shall be afforded the opportunity to present claims and defenses, and have them properly adjudicated on the merits [6] according to the facts and the

---

**6.** "On the merits" is a term of art that means that a judgment is rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments. *Black's Law Dictio-*

*nary* 1117 (7th ed.1999). To be on the merits, a judgment does not have to proceed to trial. Rather, a judgment on the merits may be made at any stage of the litigation, so long as the

law. Accordingly, we must determine whether the Millers ever received the opportunity to litigate the extra-contractual claims, i.e., whether the district court afforded the Millers their day in court on the merits of the extra-contractual claims.

¶ 43 After the appraisal panel issued its determination, in which the panel specifically declined to resolve the extra-contractual claims, the Millers moved the *Miller II* district court to "confer on the forum and schedule for resolving" the extra-contractual claims. On March 10, 2000, the *Miller II* district court denied that motion, reasoning that the extra-contractual claims were not properly before the court because "they ha[d] previously been dismissed both in *Miller I* and again in *Miller II* as final judgments on the merits."

¶ 44 Nevertheless, the Millers contend that the district court erred in denying the Millers' motion for conference and in refusing to provide a forum for the resolution of the extra-contractual claims. Inasmuch as the district court's denial of the motion for conference was predicated upon the dismissals of *Miller I* and *Miller II*, our determination of whether the Millers were denied their day in court hinges on whether the *Miller I* and *Miller II* district courts deprived the Millers of their day in court on the extra-contractual claims when they dismissed those claims in the August 21, 1997, and November 25, 1998, orders, respectively.

1. *Miller I* Order of Dismissal

¶ 45 Although the *Miller II* district court relied upon the dismissals of both *Miller I* and *Miller II* when it denied the motion for conference, we first concern ourselves with the dismissal of *Miller I*. The *Miller II* district court dismissed the Millers' extra-contractual claims on the basis that the doctrine of res judicata barred prosecution of those claims because they were the same claims that the *Miller I* district court had already dismissed. Accordingly, we first analyze whether the *Miller I* district court properly

district court rendered judgment based upon a proper application of the relevant law to the facts

dismissed the extra-contractual claims in the August 21, 1997, order.

¶ 46 On March 21, 1997, USAA moved the district court in *Miller I* to dismiss the Millers' complaint in its entirety because, as it argued to the district court, "[t]he dispute should be resolved via the appraisal process." In the August 21, 1997, order, the *Miller I* district court dismissed *all* of the Millers' claims, including the extra-contractual claims, because USAA invoked the appraisal clause of the insurance contract. The district court reasoned that the "parties [were] bound by contract to settle the dispute in this case by appraisal."

¶ 47 Appraisal clauses, like other contractual clauses requiring alternative dispute resolution, are strictly enforceable. *See Utah State Bar v. Summerhayes & Hayden,* 905 P.2d 867, 868 (Utah 1995); *see also Ice City, Inc. v. Ins. Co. of N. Am.,* 456 Pa. 210, 314 A.2d 236, 240 (1974) (stating that appraisal clauses are enforceable); *Standard Fire Ins. Co. v. Fraiman,* 514 S.W.2d 343, 345 (Tex.Civ.App.1974) (same). Therefore, a court must compel compliance with a valid appraisal clause if one party demands appraisal. *Lundy v. Farmers Group, Inc.,* 322 Ill.App.3d 214, 255 Ill.Dec. 733, 750 N.E.2d 314, 318 (2001) (holding that court may compel compliance with appraisal clause); *Aetna Cas. & Sur. Co. v. Ins. Comm'r,* 293 Md. 409, 445 A.2d 14, 19 (1982) (same).

¶ 48 Nevertheless, a litigant's constitutional right to its day in court constrains a court to compel appraisal of a dispute only if the parties expressly and unequivocally agreed to resolve the particular disputed issue by appraisal, thereby waiving their constitutional right to judicial resolution of the dispute. *See Jenkins,* 962 P.2d at 799; *see also Cade v. Zions First Nat'l Bank,* 956 P.2d 1073, 1077 (Utah Ct.App.1998) (noting that party who has not agreed to arbitrate dispute has right to court's decision on merits). Generally, to decide whether a party clearly agreed to appraisal of a particular issue, a court must review the appraisal

of the case.

clause of the underlying insurance contract, *see Summerhayes & Hayden,* 905 P.2d at 868, determine the scope of that clause, and compel appraisal accordingly, *Lundy,* 255 Ill. Dec. 733, 750 N.E.2d at 318 (maintaining that court must determine whether appraisal clause exists and whether particular dispute is covered by clause); *Riley v. Farmers Fire Ins. Co.,* 1999 Pa.Super. 179, 735 A.2d 124, 128 (1999) (stating that "insurance policy's appraisal provision provides the scope of authority for the appraisers in fashioning the appraisal award."). We therefore turn to the appraisal clause of the insurance contract itself to decide whether the extra-contractual claims were amenable to appraisal.

¶ 49 "An insurance policy is a contract between the insurer and the insured and, accordingly, is subject to the general rules of contract construction." *S.W. Energy Corp. v. Cont'l Ins. Co.,* 1999 UT 23, ¶ 12, 974 P.2d 1239. Specifically, "unless the language of an insurance contract is ambiguous or unclear, the court must construe it according to its plain and ordinary meaning." *First Am. Title Ins. Co. v. J.B. Ranch, Inc.,* 966 P.2d 834, 836 (Utah 1998). "Whether an insurance policy is ambiguous is a question of law." *S.W. Energy,* 1999 UT 23 at ¶ 14, 974 P.2d 1239. An insurance "policy is ambiguous only if it is not 'plain to a person of ordinary intelligence and understanding.' " *First Am. Title Ins. Co.,* 966 P.2d at 836 (quoting *Nielsen v. O'Reilly,* 848 P.2d 664, 666 (Utah 1992)). As we review the appraisal clause agreed to by the parties, moreover, we must "interpret words ... according to their usually accepted meanings and in light of the insurance policy as a whole." *Utah Farm Bureau Ins. Co. v. Crook,* 1999 UT 47, ¶ 5, 980 P.2d 685.

¶ 50 In section one of the insurance contract, USAA agreed to insure the Millers' home against property damage. As a condition precedent to recovery for property damage, the insurance contract requires the parties to submit the amount of loss to appraisal if a dispute arises as to the amount of loss. The appraisal clause states:

> If [the Millers] and [USAA] do not agree on the *amount of loss,* either party can demand that the *amount of the loss* be determined by appraisal. . . .
>
> The appraisers will ... set the *amount of loss.* If they submit a written report of any agreement to us, the amount agreed upon will be the *amount of loss.* If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the *amount of the loss.*

(Emphasis added.) The appraisal clause in this contract, especially in light of the contract as a whole, is plain and unambiguous.

¶ 51 According to the plain language of the appraisal clause, the appraisers were only to set the "amount of loss" of the property damage to the home. Inasmuch as the appraisal clause is a condition only in section one of the insurance contract, the clause necessarily applies only to property damage claims.

¶ 52 Further, relying on the usually accepted meaning of the term, amount of loss as used in the appraisal clause refers to the value of the injury or damage for which the Millers may seek indemnity. *Massey v. Farmers Ins. Group,* 837 P.2d 880, 882 (Okla. 1992) ("[A]ppraisal provisions permit appraisers or umpires to determine one issue, to wit, the amount of damage to the property."); 46A C.J.S. *Insurance* § 1355 (1993) ("[S]ubmissions to ascertain the 'amount of loss or damage' are to be construed to signify a proceeding to appraise and estimate the damage to the property described, but not to embrace the question of ownership or any other matter [that] goes to the root of the cause of action."). "The word 'loss' in a clause in an indemnity insurance policy ... means the injury or damage caused by the accident for which the insurer may, under the provisions of the policy, be liable. . . ." 44 Am.Jur.2d *Insurance* § 1327 (1982).

¶ 53 The only claim the Millers alleged in *Miller I* regarding the amount of damage or loss caused by the water heater's bursting was the contractual claim for property damage. None of the extra-contractual claims pertain to the amount of loss under the insurance contract. Because the clause is limited to appraisal of the amount of loss,

only the contractual claim was covered by the clause. *See Rastelli Bros. v. Netherlands Ins. Co.*, 68 F.Supp.2d 440, 442–43 (D.N.J. 1999) ("The appraisal clause ... deals exclusively with the method of handling a dispute about 'the amount of loss.' "); *J. Wise Smith & Assocs. v. Nationwide Mut. Ins. Co.*, 925 F.Supp. 528, 529 (W.D.Tenn.1995) (concluding that appraisal of amount of loss was appropriate where parties agreed to resolve amount of loss by appraisal); *Atencio v. U.S. Sec. Ins. Co.*, 676 So.2d 489, 490 (Fla.Dist.Ct. App.1996) (ruling that lower court erred in granting order to compel appraisal because dispute was not concerning "amount of loss"); *Lundy*, 255 Ill.Dec. 733, 750 N.E.2d at 319 ("Here, the appraisal process provided for in the policy was designed solely to resolve disputes over the amount of loss."); *Guider v. LCI Communications Holdings Co.*, 87 Ohio App.3d 412, 622 N.E.2d 415, 419 (1993) ("[A]n appraisal determines only the amount of loss, without resolving issues such as whether the insurer is liable under the policy."); *Riley*, 735 A.2d at 127 (" '[A]ppraisal is limited to determining the amount of loss with all other issues reserved for settlement by either negotiation or litigation.' " (quoting *Ice City, Inc. v. Ins. Co. of N. Am.*, 456 Pa. 210, 314 A.2d 236, 240 n. 12 (1974))). Therefore, the *Miller I* district court should have compelled only appraisal of the contractual claim and erred by dismissing the extra-contractual claims under the appraisal clause.[7]

¶ 54 Because the *Miller I* district court improperly dismissed the extra-contractual claims, the district court never resolved those claims on their merits. The due process clause and the open courts provision mandate that the Millers have an opportunity to litigate the merits of all controversies between them and the USAA defendants. The district court unconstitutionally denied the Millers any opportunity to have their day in court on the extra-contractual claims by improperly dismissing those claims and ordering their appraisal when the Millers had not agreed to their appraisal.

### 2. *Miller II* Order of Dismissal

¶ 55 We next turn our attention to whether the *Miller II* district court deprived the Millers of the opportunity to have their day in court on the extra-contractual claims. Whether the *Miller II* court denied the Millers the opportunity to have their day in court depends on whether that court properly dismissed their claims.

#### a. Claim Preclusion

¶ 56 On July 15, 1998, the USAA defendants moved to dismiss the extra-contractual claims alleged in *Miller II* on claim preclusion grounds. The *Miller II* district court accepted this argument, and thus, dismissed the extra-contractual claims, ruling that the doctrine of res judicata precluded those claims. Specifically, the district court reasoned:

> The doctrine of *res judicata* is clearly applicable to [the Millers' extra-contractual claims brought here and] are effectively the same as [the *Miller I* extra-contractual claims]. Dismissal in that case constituted a final judgement on the merits. As such, the parties may not again raise those issues in this law suit....

Whether the *Miller II* district court unconstitutionally denied the Millers the opportunity to have their day in court on the extra-contractual claims depends on whether the district court properly dismissed those claims on res judicata grounds.

¶ 57 "The doctrine of res judicata serves the important policy of preventing previously litigated issues from being relitigated." *Salt Lake City v. Silver Fork Pipe-*

***

7. Before the *Miller I* court, USAA contended that the entire complaint should be dismissed because "[t]he dispute" should be appraised. However, when the parties attempted to define the scope of the appraisal, USAA contended that only the contractual claim regarding the amount of loss should be appraised. USAA has never attempted to reconcile its intrinsically contradictory arguments. USAA cannot argue to the district court on the one hand that all the claims are to be appraised to achieve the end of dismissal, while on the other hand, after procuring the court-ordered dismissal, claim that only the contractual claim is to be appraised. We are unwilling to allow USAA to circumvent the legal process by arguing positions diametrically opposed to one another when advancing both positions is simply self-serving.

*line Corp.*, 913 P.2d 731, 733 (Utah 1995). Res judicata encompasses two distinct doctrines: claim preclusion and issue preclusion. *Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214. In this case, the *Miller II* court dismissed based on the doctrine of claim preclusion.

¶ 58 Generally, "claim preclusion bars a party from prosecuting in a subsequent action a claim that has been fully litigated previously." *Culbertson v. Bd. of County Comm'rs*, 2001 UT 108, ¶ 13, 44 P.3d 642; *see also Macris & Assocs.*, 2000 UT 93 at ¶ 19, 16 P.3d 1214. The party moving a court to dismiss on claim preclusion grounds bears the burden of establishing three elements, *Macris & Assocs.*, 2000 UT 93 at ¶ 20, 16 P.3d 1214 which are:

> "First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a *final judgment on the merits.*"

*Id.* (emphasis added) (quoting *Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988)); *see also Culbertson*, 2001 UT 108 at ¶ 13, 44 P.3d 642. All three elements must be established for claim preclusion to apply. *See Madsen*, 769 P.2d at 247.

¶ 59 According to the third element, "[a]n adjudication upon the merits is . . . required [to establish] claim preclusion." *Beaver County v. Qwest, Inc.*, 2001 UT 81, ¶ 20, 31 P.3d 1147. We find this element to be dispositive as to the applicability of res judicata in this case. The *Miller II* district court, applying the doctrine of res judicata, dismissed the extra-contractual claims because those same claims had been dismissed in the August 21, 1997, order of *Miller I* as a "final judgment on the merits." However, we conclude that the trial court erred in ruling that res judicata barred the extra-contractual claims for the ensuing reasons.

¶ 60 First, the August 21, 1997, order was not final. Unless an order or judgment disposes of all the parties and all the claims on the merits, that order is not a final order or judgment because claims are left pending. *Bradbury v. Valencia*, 2000 UT 50, ¶¶ 9 & 11, 5 P.3d 649; *Gen. Motors Acceptance Corp. v. Martinez*, 712 P.2d 243, 244 (Utah 1985). Furthermore, as we stated above, an order compelling appraisal is not a final judgment. Although the August 21, 1997, order dismissed all of the Millers' claims, including the extra-contractual claims, it was not a final order because it merely ordered that all of the Millers' claims be submitted to appraisal.[8] The order left the claims pending, viable, and outstanding.

¶ 61 Next, the August 21, 1997, order was not "[a]n adjudication upon the merits." *Beaver County*, 2001 UT 81 at ¶ 20, 31 P.3d 1147. Rule 41(b) of the Utah Rules of Civil Procedure "comprehensively define[s] a dismissal on the merits." *Madsen*, 769 P.2d at 248; *see also Beaver County*, 2001 UT 81 at ¶¶ 19–20, 31 P.3d 1147. Rule 41(b) provides in pertinent part:

> [A] dismissal . . ., other than a *dismissal for lack of jurisdiction* or for improper venue or for lack of an indispensable party, *operates as an adjudication upon the merits.*

Utah R. Civ. P. 41(b) (emphasis added). Accordingly, we have held that under rule 41(b), "a dismissal for lack of jurisdiction does not result in an adjudication on the merits." *Beaver County*, 2001 UT 81 at ¶ 19, 31 P.3d 1147.

¶ 62 In its August 21, 1997, order, the *Miller I* district court never addressed the merits of the allegations in the complaint, but simply dismissed the Millers' claims because "the parties [were] bound by contract to settle the dispute in this case by appraisal." The district court dismissed *Miller I* on the assumption that it lacked jurisdiction to hear the Millers' claims, i.e., on the assumption that the insurance contract vested the appraisal panel with jurisdiction to hear the claims and that the contract reciprocally di-

---

**8.** Contrary to our holding in ¶¶ 50–54, *supra,* by dismissing all of the Millers' claims pursuant to the appraisal clause, the *Miller I* district court tacitly manifested the intention that all of the Millers' claims were to be appraised.

vested the district court of jurisdiction until the completion of the appraisal process. Accordingly, because the district court dismissed for lack of jurisdiction, we conclude that the extra-contractual claims were never dismissed "on the merits." *See, e.g., Beaver County,* 2001 UT 81 at ¶ 19, 34 P.3d 1147.

¶ 63 Therefore, the USAA defendants never established the third element of claim preclusion. Inasmuch as the USAA defendants never established claim preclusion, the *Miller II* district court should not have dismissed the extra-contractual claims and, in doing so, denied the Millers the opportunity to have their day in court on the merits of those claims.[9]

### b. Court's Duty to Determine Scope of Appraisal Clause

¶ 64 The district court declined to address the scope of the appraisal clause, vesting the appraisal panel with authority to determine the scope of the clause in its discretion. The determination of the scope of the appraisal clause is a question of law for determination by the district court because it is a matter of contract interpretation. *See Pac. Dev., L.C. v. Orton,* 2001 UT 36, ¶ 13, 23 P.3d 1035; *see also Caldwell v. Ford, Bacon & Davis Utah, Inc.,* 777 P.2d 483, 486 (Utah 1989). The district court erred in devolving the determination of the scope of appraisal to the panel. In doing so, the district court improperly abdicated its duty to interpret the appraisal clause and determine the scope of appraisal. *See Portland Gen. Elec. Co. v. U.S. Bank Trust Nat'l Assoc.,* 218 F.3d 1085, 1090 (9th Cir.2000); *Lundy v. Farmers Ins. Exch.,* 322 Ill.App.3d 214, 255 Ill.Dec. 733, 750 N.E.2d 314, 318 (2001).

### 3. Opportunity to Litigate

¶ 65 Finally, the *Miller II* district court unconstitutionally denied the Millers the opportunity to have their day in court when it denied the Millers' motion for conference. After the appraisal panel appropriately declined to resolve the extra-contractual claims, the Millers requested the *Miller II* court to either set the extra-contractual claims for trial or provide them another forum for the resolution of those claims. On March 10, 2000, the *Miller II* court denied the motion, stating that both the *Miller I* and *Miller II* courts had already dismissed those claims. Because we have held herein that both the *Miller I* and *Miller II* courts improperly dismissed the extra-contractual claims and should have adjudicated those claims on the merits, we must now also conclude that the district court erred in relying on those decisions to determine that it would not address the extra-contractual claims. Therefore, the Millers were never afforded an opportunity to have their day in court on the extra-contractual claims, and those claims have never been adjudicated on the merits.

¶ 66 Because we conclude that the district court unconstitutionally denied the Millers the opportunity to have their day in court on the merits of the extra-contractual claims, we reverse the district court's dismissal and remand to the district court for further proceedings consistent with this opinion.[10]

### IV. CONFIRMATION OF APPRAISAL AWARD

¶ 67 The next issue on appeal is whether the *Miller II* district court erred in

---

9. The USAA defendants argue in their brief that because "the Millers presented all of their claims to the appraisal panel, re-litigation of the claims would be barred" by res judicata. We recognize that an unconfirmed appraisal award can bar a subsequent suit. Here, however, the appraisal panel, exercising the discretion afforded it by the *Miller II* court, specifically declined to address those claims. In doing so, the panel stated that it believed the district court was better suited to resolve those claims. Although the claims may have been presented to the panel, the panel never rendered a judgment or an award on them. Without a judgment, res judicata does not apply. *See Macris & Assocs.,* 2000 UT 93 at ¶ 19, 16

P.3d 1214. Moreover, the district court never should have dismissed them in the first place, and if the court had not dismissed, they would be pending before the district court on the merits. We refuse to hold that when the district court erroneously dismissed those claims and they were erroneously presented to the appraisal panel, they were forever barred by the doctrine of res judicata.

10. Although we remand for the district court to afford the Millers the opportunity to present their claims, we do not take any position on the validity or resolution of those claims.

refusing to confirm the appraisal award on the contractual claim. The Millers contend that section 78–31a–12 of the Utah Arbitration Act required the district court to confirm the appraisal award. That section reads:

Upon motion to the court by any party to the arbitration proceeding for the confirmation of the award, and 20 days notice to all parties, the court shall confirm the award unless a motion is timely filed to vacate or modify the award.

Utah Code Ann. § 78–31a–12 (1996); *see also Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 951 (Utah 1996) (observing that arbitration " 'award [must] be confirmed by a court unless it is vacated, modified, or corrected' " (quoting 4 Am.Jur.2d *Alternative Dispute Resolution* § 229 (1995))).

¶ 68 However, in light of our reversal of the March 10, 2000, order, there is no longer a final order in this case. We generally decline to address piecemeal appeals in the same litigation. *Loffredo v. Holt,* 2001 UT 97, ¶ 11, 37 P.3d 1070. Therefore, we decline to address this issue. Instead, this issue is remanded to the district court, and the district court must determine whether it will confirm the appraisal panel's determination and enter judgment thereon.

### V. ATTORNEY FEES

¶ 69 In light of our reversal of the issues on appeal, we remand to the district court to determine if the Millers are entitled to attorney fees. Under Utah law, attorney fees are generally not recoverable "unless authorized by statute or contract." *Faust v. KAI Techs., Inc.,* 2000 UT 82, ¶ 17, 15 P.3d 1266. The only basis the Millers have proffered to support their attorney fee entitlement is section 78–31a–16 of the Utah Arbitration Act. However, as held above, the Utah Arbitration Act does not directly apply to appraisals. *See supra* ¶¶ 35–37. Therefore, on remand the district court must determine if the Millers are entitled to attorney fees.

### CONCLUSION

¶ 70 We conclude that we have jurisdiction to hear this appeal because the Millers filed a timely notice of appeal. Additionally, we conclude that the district court denied the Millers the opportunity to have their constitutional right to their day in court with respect to the extra-contractual claims. Therefore, we reverse the March 10, 2000, order and remand for proceedings consistent with this opinion. We also remand to the district court to determine whether the Millers are entitled to attorney fees.

¶ 71 Justice DURHAM, Justice DURRANT, Justice WILKINS, and Judge BILLINGS concur in Associate Chief Justice RUSSON'S opinion.

¶ 72 Having disqualified himself, Chief Justice HOWE does not participate herein; Court of Appeals Judge JUDITH M. BILLINGS sat.