**2016 UT App 171**

## THE UTAH COURT OF APPEALS

DENISON MINES (USA) CORPORATION AND
DENISON WHITE MESA LLC,
*Appellees,*
*v.*
KGL ASSOCIATES INC.,
*Appellant.*

Opinion
No. 20150049-CA
Filed August 11, 2016

Seventh District Court, Monticello Department
The Honorable Lyle R. Anderson
No. 100700151

Denver C. Snuffer Jr., Steven R. Paul, Michael B.
Lapicola, and James J. Hartnett, Attorneys
for Appellant

Craig C. Coburn, Brian D. Bolinder, and Samantha E.
Wilcox, Attorneys for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGE KATE A. TOOMEY and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

CHRISTIANSEN, Judge:

¶1      KGL Associates Inc. (KGL) appeals from the order of the
district court confirming an arbitration award in favor of
Denison Mines Corporation and Denison White Mesa LLC
(collectively, Denison). We affirm.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

BACKGROUND

¶2    This case arises from a breach of contract action. In October 2009, Denison contracted with KGL to construct a mill tailings cell at the White Mesa Mill near Blanding, Utah, for a lump sum of $4,339,350. During construction, Denison issued several change orders, which increased KGL's compensation by approximately $724,000. Denison also accelerated payments and advanced money to KGL to assist KGL with its cash flow problems. After Denison refused to issue additional change orders that KGL proposed, KGL unilaterally terminated the parties' contract, abandoned the project prior to completion, and acquired a lien on Denison's property. Additionally, KGL filed a lis pendens against Denison's property.

¶3    Before KGL walked off the project, Denison had paid or advanced KGL all but $454,000 of the approximately $5,063,000 adjusted contract price. Moreover, when KGL walked off the project, it was more than $2 million in arrears in its payments to subcontractors and suppliers, triggering further lien and bond claims against Denison and its property. Denison settled with these subcontractors and suppliers for roughly $1,860,000 and spent approximately $355,000 completing the project.

¶4    Ultimately, Denison and KGL agreed to submit their dispute to binding arbitration, and on August 23, 2013, they entered into an agreement to arbitrate (the Arbitration Agreement). Among other things, the Arbitration Agreement provided that the arbitrator would "have until December 31, 2013 to render his interim award, in the form of a brief written, reasoned award, not to exceed 5 pages in length." The Arbitration Agreement also provided:

> The Arbitrator shall decide which party is the
> prevailing party . . . and shall, consistent therewith,
> award arbitrator's fees, costs and expenses,

reasonable attorney's fees and costs to the prevailing party. Proof of attorney's fees and other costs recoverable by the prevailing party shall follow the Arbitrator's interim award on the merits . . . . The final award shall be issued no later than 30 days after the submission of proof of attorney's fees and costs, but no later than February 28, 2014.

¶5  The parties' dispute encompassed nine claims by Denison for affirmative relief, three claims by KGL for affirmative relief, and multiple affirmative defenses by both parties. At the conclusion of the arbitration hearing, the arbitrator informed the parties that it might take him more than five pages to provide a reasoned award due to the magnitude of the case. Neither party objected. In addition, the parties agreed to extend the deadline for the arbitrator to issue his interim award (the Interim Award) to January 10, 2014.

¶6  On January 10, 2014, the arbitrator advised the parties that he was having computer difficulties and that he would not be able to issue the Interim Award until January 11. Neither party objected to the delay. On January 11, the arbitrator issued a nineteen-page Interim Award, explaining that the "Award exceed[ed] counsel's requested page limitation due to the complexity of some issues which require[d] elaboration."[2] Among other things, the arbitrator determined that KGL had mismanaged its work on the project, had abandoned the project, and had materially breached the parties' contract. Therefore, the arbitrator determined that Denison's "completion actions and

_____

2. KGL contends in its briefing that "[t]he parties . . . did not agree to a 19-page Award." However, KGL conceded at oral argument that it agreed the arbitrator could exceed the five-page limit specified in the Arbitration Agreement.

decisions were justified" and that Denison was entitled to its reasonable costs of completion after KGL's abandonment of the project. In addition, the arbitrator rejected KGL's fraud in the inducement defense and concluded that KGL had not demonstrated it was entitled to a monetary award. The arbitrator then awarded damages and interest to Denison totaling $3,989,654, subject to Denison submitting "verified statements based on generally accepted accounting principles to confirm those amounts [the arbitrator] tentatively allowed" and to "confirm[] that the costs in the records total said amounts and that they do not arise from other causes."

¶7     On January 30, 2014, KGL objected to the Interim Award and the arbitrator's request for verification, arguing that the arbitrator lacked the authority to reopen the hearing or to request additional evidence "related to the underlying claims presented for resolution at the hearing." KGL asserted that the Interim Award did not comply with the Arbitration Agreement, because it failed to resolve all of the issues submitted for resolution. In addition, KGL asked the arbitrator to modify the Interim Award to reject Denison's claims and to find that KGL was the prevailing party. On February 7, Denison responded to KGL's objections and argued that its damages claims were supported by the evidence from the arbitration hearing and that additional information was unnecessary. Nevertheless, in response to the arbitrator's request, Denison provided a "Verification Statement" and declarations from three hearing witnesses.

¶8     On February 28, 2014, the arbitrator issued his final award (the Final Award), changing none of the prevailing-party determinations or the amount of damages or interest awarded to Denison in the Interim Award. Furthermore, as contemplated by the Arbitration Agreement, the Final Award included an additional award to Denison for attorney fees and costs, bringing the total award to $4,820,043.99. That same day, the

arbitrator issued an "Arbitrator Ruling on KGL Objections and Other Considerations," wherein he removed his request in the Interim Award for verification by Denison. The arbitrator stated that he had "reconsidered the record," that it was "sufficient in and of itself," and that he had not considered Denison's response to his request for verification. Denison then filed a motion in the district court to confirm the Final Award, and KGL filed a counter-motion to have the Final Award vacated.

¶9 Among other things, KGL contended that the Interim Award was untimely because (1) the Interim Award failed to "offer a brief, reasoned decision" on two of KGL's three change-order claims; (2) the arbitrator "did not issue a final Award on the merits" of Denison's claims in the Interim Award because he asked for verification of Denison's damages; and (3) the arbitrator inappropriately reopened the hearing "for the submission of additional evidence by Denison, but not KGL." KGL also asserted that the arbitrator demonstrated evident partiality in favor of Denison. After a hearing, the district court confirmed the Final Award. The court concluded that KGL's objection to the timeliness of the Interim Award did not warrant vacatur of the Final Award, that the arbitrator did not exceed his authority or exhibit evident partiality in favor of Denison, and that the arbitrator conducted the arbitration process "fairly and honestly and in a manner that respected and did not prejudice the substantial rights of either KGL or Denison." KGL timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶10 KGL contends that the district court erred by confirming the Final Award because (1) the arbitrator exceeded his authority and (2) the arbitrator exhibited evident partiality in favor of Denison.

¶11   There are two standards applicable to the review of arbitration awards. The standard of review for a district court reviewing an arbitration award "'is an extremely narrow one' giving 'considerable leeway to the arbitrator,' and setting aside the arbitrator's decision 'only in certain narrow circumstances.'" *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 10, 1 P.3d 1095 (additional internal quotation marks omitted) (quoting *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996)). It is well settled that a district court "may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment." *Buzas*, 925 P.2d at 947. In reviewing the order of a district court confirming, vacating, or modifying an arbitration award, "we grant no deference to the district court's conclusions [of law] but review them for correctness," and we review the district court's factual findings for clear error. *Id.* at 948 (alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

¶12   The Utah Uniform Arbitration Act (the Act) governs the arbitration process. *See* Utah Code Ann. §§ 78B-11-101 to -131 (LexisNexis 2012). "The Act supports arbitration of both present and future disputes and reflects long-standing public policy favoring speedy and inexpensive methods of adjudicating disputes." *Allred v. Educators Mutual Ins. Ass'n of Utah*, 909 P.2d 1263, 1265 (Utah 1996). "Accordingly, the standard for reviewing an arbitration award is highly deferential to the arbitrator." *Buzas*, 925 P.2d at 946. "[J]udicial review of arbitration awards should not be pervasive in scope or encourage repetitive adjudications but should be limited to the statutory grounds and procedures for review." *DeVore v. IHC Hosps., Inc.*, 884 P.2d 1246, 1251 (Utah 1994); *see also Allred*, 909 P.2d at 1265 ("Given the public policy and law in support of arbitration, judicial review of

arbitration awards confirmed pursuant to the Act is limited to those grounds and procedures provided for under the Act."). Generally, "an arbitration award will not be disturbed . . . because the court does not agree with the award as long as the proceeding was fair and honest and the substantial rights of the parties were respected." *DeVore*, 884 P.2d at 1251. We bear these fundamental arbitration principles in mind as we review whether the district court's decision denying KGL's motion to vacate the Final Award was correct.

## I. The Arbitrator Did Not Exceed His Authority.

¶13    KGL contends that the district court erred in confirming the arbitrator's award because the arbitrator exceeded his authority "when he improperly extended the hearing and failed to issue a timely award on the merits."

¶14    Under the Act, a court shall vacate an arbitration award if it appears that "an arbitrator exceeded the arbitrator's authority." Utah Code Ann. § 78B-11-124(1)(d). For a reviewing court to conclude that an arbitrator exceeded his or her authority, the court must determine that the arbitrator's award "covers areas not contemplated by the submission agreement" or determine that the award is "without foundation in reason or fact." *Buzas*, 925 P.2d at 949–50 (citation and internal quotation marks omitted). In this case, KGL has not explicitly identified either situation. Rather, KGL contends that the arbitrator exceeded his authority by (1) untimely issuing the Interim Award; (2) "reopen[ing] the hearing for Denison alone"; and (3) reconsidering the record evidence after issuing the Interim Award. We address each argument in turn.

A.    The Timeliness of the Interim Award

¶15    KGL first contends that the arbitrator exceeded his authority under section 78B-11-120 of the Utah Code, which

provides that "[a]n award must be made within the time specified by the agreement to arbitrate."[3] Utah Code Ann. § 78B-11-120(2). In this case, the parties' Arbitration Agreement as amended required the arbitrator to issue an "interim award on the merits" by January 10, 2014. On appeal, KGL contends that the arbitrator's Interim Award, issued on January 11, 2014, did not constitute an "interim award on the merits" because it did not finally and "fully resolve the claims submitted on the merits." Specifically, KGL argues that the Interim Award did not do so because (1) the arbitrator "[f]ound that Denison's damage claims were not adequately proven and required additional 'verification'" and (2) the Interim Award failed to address two of KGL's change-order claims.[4] Thus, according to KGL, the untimely issuance of the Interim Award warrants vacatur of the Final Award.

¶16   The relevant provision of the Arbitration Agreement provides:

> The Arbitrator *shall decide which party is the prevailing party* . . . and shall, consistent therewith, award arbitrator's fees, costs and expenses, reasonable attorney's fees and costs to the prevailing party. Proof of attorney's fees and other costs recoverable by the prevailing party *shall follow the Arbitrator's interim award on the merits* and proceed as directed by the Arbitrator. The final

---

3. We note that section 78B-11-120 does not distinguish between interim and final awards. *See* Utah Code Ann. § 78B-11-120(2) (LexisNexis 2012).

4. During oral argument before this court, KGL clarified that it is not challenging the Interim Award on the ground that the arbitrator issued the award one day late.

award shall be issued no later than 30 days after the submission of proof of attorney's fees and costs, but no later than February 28, 2014.

(Emphases added.)

¶17 On January 11, 2014, the arbitrator issued his nineteen-page Interim Award. The arbitrator determined that KGL had mismanaged its work on the project, abandoned the project, and materially breached the parties' contract. Consequently, the arbitrator determined that Denison's "completion actions and decisions were justified" and that Denison's reasonable costs of completion after KGL's abandonment were justified and awardable. The arbitrator considered several other issues as well. He rejected KGL's fraud in the inducement defense, which, according to KGL, "would have been a complete defense to Denison's affirmative claim for breach of contract," concluding that "[t]here was no 'inducement' or 'fraud' here." He determined that KGL "was or should have been aware of any potential impact of [archaeological sites] upon their earthwork operations at Denison's mine" and that despite the high number of archaeological sites and Denison's willingness to adjust KGL's contract to account for the archaeological sites, "KGL did not ask Denison to revise its pricing or its proposed schedule." He also considered KGL's claims and determined that "the preponderance of the evidence does not justify any monetary award to KGL." The arbitrator recognized that KGL had decided to rely on the "'total cost approach' for its recovery" and that "KGL's approach to proving that the total cost method should be applied for its relief [was] seriously lacking." Because KGL failed to present "any other alternative, credible method that [met] the test of allowable damages upon which an award may be made," the arbitrator concluded that KGL had not demonstrated that it was entitled to a monetary award.

¶18 The arbitrator then concluded that Denison had prevailed, and he awarded damages of $3,258,700 and interest of $730,954 to Denison, subject to verification. For verification, the arbitrator required Denison to submit "verified statements based upon generally accepted accounting principles to confirm those amounts [the arbitrator] tentatively allowed" and to "confirm[] that the costs in the records total said amounts and that they do not arise from other causes." The arbitrator also awarded Denison its reasonable attorney fees and costs, as authorized by statute, *see* Utah Code Ann. §§ 38-1a-101 to -804 (LexisNexis Supp. 2013), in an amount to be determined by the arbitrator after Denison submitted proof of such. Finally, the arbitrator ordered KGL "to provide Denison . . . with original, signed and recordable releases of KGL's Lien and Lis Pendens against [Denison's] mine property."

1. The arbitrator's request for verification of Denison's damages

¶19 KGL first contends that the arbitrator inappropriately "[f]ound that Denison's damage claims were not adequately proven and required additional 'verification.'" Relying on the arbitrator's request for verification, KGL further asserts that the Interim Award did not finally resolve the claims submitted on the merits, and consequently, that the Interim Award did not constitute an award "on the merits" as required by the Arbitration Agreement.

¶20 In this case, the Arbitration Agreement provided for an "interim award on the merits"; however, the Arbitration Agreement did not define "on the merits" or "merits." No Utah decision has addressed the meaning of these terms in an arbitration context, but Utah courts have discussed the meaning of these terms in other contexts. "'On the merits' is a term of art that means that a judgment is rendered only after a court has evaluated the relevant evidence and the parties' substantive

arguments." *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 42 n.6, 44 P.3d 663 (citation omitted). "As a technical legal term, 'merits' has been defined as a matter of substance, as distinguished from a matter of form." *State Dep't of Soc. Servs. ex rel. State v. Ruscetta*, 742 P.2d 114, 116 (Utah Ct. App. 1987). And "[i]n the context of res judicata, 'merits' has been interpreted to mean real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form." *Id.* "A judgment is upon the merits when it amounts to a declaration of the law as to the respective rights and duties of the parties based on . . . facts and evidence upon which the rights of recovery depend, irrespective of formal, technical, or dilatory objections or contentions." *Id.* (omission in original) (citation and internal quotation marks omitted).

¶21    In light of these definitions, the Interim Award's content indicates that it was an award "on the merits," as required by the Arbitration Agreement. Namely, the arbitrator's Interim Award decided the issues submitted as a matter of substance rather than on procedural grounds. *See Miller*, 2002 UT 6, ¶ 42 n.6; *Ruscetta*, 742 P.2d at 116. In the Interim Award, the arbitrator (1) determined that KGL had abandoned the project and materially breached the parties' contract; (2) rejected KGL's fraud in the inducement defense; (3) rejected KGL's claims for relief because KGL had failed to prove it was entitled to damages; (4) ruled that Denison was entitled to damages based on KGL's material breach of the parties' contract; and (5) ordered KGL to release its lien against Denison's property. *Supra* ¶¶ 17–18. These are declarations of law rather than matters of procedure. Simply put, the arbitrator's Interim Award determined that Denison was the prevailing party and that Denison was entitled to damages.

¶22    Nevertheless, KGL contends that the arbitrator's request for verification demonstrates that the arbitrator found that Denison "failed to satisfy its burden of proof as to damages with

respect to all of its contested claims." KGL made the same argument at the hearing before the district court: "I would say the arbitrator found that Denison failed to meet its burden of proof based on the evidence presented at the hearing. That's what the interim award says, okay?" The district court, however, disagreed: "He didn't say that. He said something different which you have recast in those terms because you think it's the same thing, but he didn't say [Denison] failed to meet [its] burden of proof. He said some of this is confusing[ and that he] would like to have some more verification[.]" We are similarly unpersuaded by KGL's argument.

¶23    In his request for verification, the arbitrator stated, with our emphases added:

> I require Denison to submit . . . verified statements based upon generally accepted accounting principles to *confirm those amounts* I have tentatively allowed, but for which I wish verification . . . . This is not a request for an "audit," but rather *for confirmation that the costs in the records total said amounts* and that they do not arise from other causes.

KGL's interpretation of the arbitrator's request for verification is untenable. There is nothing about the arbitrator's request for verification that indicates the arbitrator had concluded that Denison had failed to prove its claims or its entitlement to damages. Rather, the arbitrator's request for verification related only to the *amount* of Denison's damages, i.e., the arbitrator was seeking to confirm the math behind the damages evidence Denison had presented at the arbitration hearing. Consequently, KGL's argument in this regard is unsupported by the actual language of the arbitrator's request for verification.

¶24   KGL also asserts that the arbitrator's request for verification demonstrates that the arbitrator had failed to finally resolve the claims submitted for resolution on the merits, in violation of the Arbitration Agreement. According to KGL, the "express terms of the [Arbitration] Agreement . . . required that all matters submitted to the Arbitrator for determination be *finally* resolved" by the Interim Award. (Emphasis added.) We discern no such requirement from the Arbitration Agreement. In support of its argument, KGL relies on the following provision from the Arbitration Agreement: "Proof of attorney's fees and other costs recoverable by the prevailing party shall follow the Arbitrator's interim award on the merits and proceed as directed by the Arbitrator." Contrary to KGL's assertion, nothing in this provision expressly states that the Interim Award was required to resolve the parties' dispute, including the amount of damages, in a final and irrevocable manner, a fact which KGL implicitly recognized by asking the arbitrator to modify the Interim Award to "deny[] Denison any recovery." Likewise, none of the above-mentioned definitions of "on the merits," *see supra* ¶ 20, suggest that an "interim award on the merits" requires a final and binding statement of damages. Thus, the fact that the Interim Award left the amount of Denison's damages subject to final verification does not render the Interim Award substantively incomplete such that it does not constitute an award "on the merits."

¶25   Similarly, KGL argues that the same provision of the Arbitration Agreement unambiguously means that "the 'interim award' was to address 'the merits' of the dispute; the only thing to follow was 'proof of attorney's fees and other costs.'" Again, we do not think the language in the Arbitration Agreement is nearly as exacting as KGL asserts. Particularly, we do not read the language in the Arbitration Agreement as imposing a firm restriction on what the arbitrator could and could not consider after issuing the Interim Award. Instead, we read this provision as simply requiring the arbitrator to determine attorney fees and

costs *after* issuing his Interim Award. In other words, the Arbitration Agreement contains no explicit limit on the arbitrator's authority to revisit the amount of his damages award between the Interim and Final Awards.

¶26   Based on the foregoing, we are persuaded that the Interim Award constituted an award "on the merits." Although the arbitrator left Denison's damages award open to final verification, nothing in the Arbitration Agreement explicitly prohibited him from doing so, and the fact that he did so does not render the Interim Award substantively incomplete. Moreover, the substance of the Interim Award indicates that it is an award "on the merits." Consequently, we are not convinced that the arbitrator's request for verification rendered the Interim Award untimely, as suggested by KGL.

   2.   KGL's change-order claims

¶27   KGL next contends that the Interim Award did not constitute an "interim award on the merits" because it did not address two of KGL's change-order claims and was therefore untimely. According to KGL, it was "entitled to have the Award address [its] claims via a 'brief, reasoned award,'" and therefore, "[t]he arbitrator's failure to resolve KGL's claims requires vacatur." We disagree.

¶28   To begin with, the Arbitration Agreement merely required the arbitrator to issue a "brief, reasoned award." Contrary to KGL's assertion, the Arbitration Agreement did not explicitly require the arbitrator to specifically address each claim asserted by the parties or to issue a reasoned decision on specific claims. *See Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 324 (Utah 1998) ("Irrefutably, the arbitrator had jurisdiction to resolve the ultimate matter on any of the reasonable grounds presented by the parties. In deciding

whether to confirm or vacate the award, we will not assess the wisdom of any particular decisional basis.").

¶29    Moreover, KGL has failed to demonstrate that it did not receive a "reasoned award." Although Utah courts have not addressed what constitutes a "reasoned award," the Eleventh Circuit Court of Appeals' definition is persuasive:

> Webster's [Dictionary] defines "reasoned" as "based on or marked by reasoning," and "provided with or marked by the detailed listing or mention of reasons." Relatedly, "reason"—as used in this context—is defined as "an expression or statement offered as an explanation of a belief or assertion or as a justification of an act or procedure." Strictly speaking, then, a "reasoned" award is an award that is provided with or marked by the detailed listing or mention of expressions or statements offered as a justification of an act—the "act" here being, of course, the decision of the [arbitrators].

*Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011) (emphasis and citations omitted).

¶30    At its core, the dispute between Denison and KGL was about which party breached the contract. Thus, the primary issue submitted to the arbitrator was whether either KGL or Denison, or both, failed to perform their obligations under the contract. The arbitrator's Interim Award set forth myriad ways in which KGL mismanaged its work on the project, and the arbitrator plainly concluded that KGL had abandoned the project and materially breached the parties' contract. Consequently, we certainly cannot say that the Interim Award is devoid of any statements offered as a justification for the arbitrator's conclusion that Denison was the prevailing party. *See*

*id.* While KGL's change-order claims could have been used as "intermediary mileposts" to guide the arbitrator's ultimate decision, we conclude that the arbitrator was not required to specifically address each of KGL's change-order claims. *See Intermountain Power Agency*, 961 P.2d at 323–24.[5] The fact that the arbitrator did not explicitly address two of KGL's change-order claims does not indicate that the Interim Award was so substantively incomplete as not to constitute an award "on the merits" or that the Interim Award was untimely rendered.

¶31   In sum, we are unpersuaded that the arbitrator's request for verification and the fact that he did not explicitly address two of KGL's change-order claims render the Interim Award untimely in violation of Utah Code section 78B-11-120. And even if we were to assume that the arbitrator's Interim Award was untimely issued for the reasons alleged by KGL, we would conclude that the delay was harmless. *See Jones v. Cyprus Plateau Mining Corp.*, 944 P.2d 357, 360 (Utah 1997) ("Harmless errors are those that are sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings.").

---

5. We also note that it is not certain that the arbitrator did in fact fail to address KGL's change-order claims. In the Interim Award, the arbitrator observed that "had Denison agreed to the change orders as presented by KGL and paid monies, or released remaining retainage, there were NOT sufficient monies remaining in its Contract to save KGL from disaster." In other words, "there was not enough money in the Contract as a whole, even with the pending change orders, which would have come close to paying off KGL's obligations to subcontractors, suppliers and other creditors." The arbitrator therefore concluded, "Denison's completion actions and decisions were justified." The arbitrator's statements indicate that he did consider KGL's change-order claims.

¶32   KGL contends that under section 78B-11-120, an arbitration award that is issued after the time specified by the agreement to arbitrate is void. However, we do not believe that the statute mandates such a strict result. Section 78B-11-120 does not specifically provide for vacatur on the basis of untimely rendition of an award, nor does it specifically provide that an untimely arbitration award is void as a matter of law. *See* Utah Code Ann. § 78B-11-120(2) (LexisNexis 2012). Indeed, section 78B-11-120 does not address the consequences of an untimely arbitration award at all.[6] *See id.*

¶33   As discussed above, an arbitration award "will not be disturbed on account of irregularities or informalities, or because the court does not agree with the award, so long as the proceeding has been fair and honest and the substantial rights of the parties have been respected." *Allred v. Educators Mutual Ins. Ass'n of Utah*, 909 P.2d 1263, 1265 (Utah 1996) (citation and internal quotation marks omitted). Under this fairness standard, we do not believe that a short delay, or even a six-week delay like the one alleged here,[7] should automatically negate the parties' and the arbitrator's protracted efforts to resolve a dispute so long as neither party is prejudiced by the delay. *See, e.g.*, *West Rock Lodge No. 2120 v. Geometric Tool Co.*, 406 F.2d 284, 286 (2d Cir. 1968) ("[W]e believe it to be a better rule that any limitation upon the time in which an arbitrator can render his

---

6. Notably, KGL has not cited, nor have we been able to find, any case in which a court vacated a timely *final* award because an *interim* award was untimely rendered.

7. According to KGL, the Interim Award was "over six weeks late" because "[a]n Award that finally resolved all of the claims submitted to the Arbitrator at the hearing was not issued by the Arbitrator until February 28, 2014," when the arbitrator issued his Final Award.

award be a directory limitation, not a mandatory one . . . ."); *Brandon v. Hines*, 439 A.2d 496, 510 (D.C. 1981) ("Recently, . . . courts have held that time limitation on rendering arbitration awards—whether specified by statute, rule, or contract—are 'directory.'" (collecting cases)); *International Bank of Commerce-Brownsville v. International Energy Dev. Corp.*, 981 S.W.2d 38, 56 (Tex. App. 1998) (noting that the Federal Arbitration Act "does not specifically provide for vacatur on the basis of untimely rendition of an award" and concluding that "[a] court has the discretion to uphold a late award when there has been no objection to the delay prior to rendition of the award or no showing of harm or prejudice caused by the delay"); *Anderson v. Nichols*, 359 S.E.2d 117, 121 n.2 (W. Va. 1987) (observing that "a short de minimis delay by which no one is harmed should not be permitted to void the prolonged efforts of the arbitrators").

¶34    In this case, even assuming that the Interim Award was untimely, KGL has not demonstrated any prejudice arising out of the delay, nor do we perceive any. The arbitrator's damages award remained the same between the Interim and Final Awards, and there is simply no indication that the arbitrator's decision would have been any different had the Interim Award not been subject to final verification with regard to Denison's damages. Both parties are essentially in the exact same position now as they were on the day the arbitrator issued the Interim Award. Thus, even if the Interim Award was untimely issued, we conclude that it does not warrant vacatur of the Final Award.

B.    The Arbitrator's Reopening of the Hearing

¶35    KGL next contends that "[t]he arbitrator's decision to reopen the hearing for Denison alone requires vacatur." We disagree.

¶36    As a preliminary consideration, we note that even if the arbitrator had asked both sides to submit additional verification,

there likely would have been nothing for KGL to submit because the arbitrator was seeking verification of Denison's damages alone. But more importantly, in his ruling on KGL's objections, the arbitrator specifically stated that the record evidence from the arbitration hearing was sufficient "in and of itself" and that he had not considered Denison's additional verification. Consequently, even if the arbitrator erred by requesting additional verification from Denison, because the arbitrator ultimately withdrew that request and declined to consider the verification, that error did not affect his decision and was therefore harmless. Accordingly, we conclude that the arbitrator did not exceed his authority under the Arbitration Agreement; while the arbitrator's actions were perhaps irregular or informal, we will not disturb the arbitrator's award on these bases. *See Allred v. Educators Mutual Ins. Ass'n of Utah*, 909 P.2d 1263, 1265 (Utah 1996).

C.     The Arbitrator's Reconsideration of the Record Evidence

¶37     Finally, KGL contends that "[t]he arbitrator's untimely reconsideration of the record evidence requires vacatur." KGL directs our attention to the arbitrator's ruling on KGL's objections to the Interim Award, which stated that the arbitrator "has again considered the sworn testimony of Denison witnesses and the itemizations of damages submitted during the hearings in supporting exhibits." According to KGL, "the parties' Agreement did not permit the Arbitrator to 'reconsider' the evidence submitted at the hearing after January 10, 2014, much less reconsider only select portions of the evidence favorable to only one party."

¶38     We first observe that nothing in the Arbitration Agreement explicitly prohibited the arbitrator from revisiting and reconsidering the hearing record between the Interim and Final Awards. But in any event, the arbitrator's reconsideration of the record evidence was nothing more than a procedural

irregularity or informality. In the end, the arbitrator made no modifications to the terms and provisions of the Interim Award, and thus, his reconsideration of the record evidence had no practical effect on the Final Award or the ultimate fairness of the arbitration proceedings. Under *Allred*, "so long as the proceeding has been fair and honest and the substantial rights of the parties have been respected," we will not disturb an arbitration award. 909 P.2d at 1265 (citation and internal quotation marks omitted). Accordingly, we reject KGL's claim that the arbitrator's reconsideration of the record evidence requires vacatur of the Final Award.

¶39     Based on the foregoing, we conclude that the district court did not err in determining that the arbitrator had not exceeded his authority and that KGL's "objection to the timeliness of the Interim Award . . . does not warrant vacatur of the Final Award." We therefore affirm the district court's confirmation of the Final Award on this basis.

## II. The Arbitrator Did Not Exhibit Evident Partiality.

¶40     KGL next contends that "[t]he district court's decision should be reversed and the award should be vacated because the arbitrator's conduct demonstrates evident partiality in favor of Denison."

¶41     Pursuant to section 78B-11-124 of the Utah Code, "[u]pon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if: . . . there was . . . evident partiality by an arbitrator appointed as a neutral arbitrator." Utah Code Ann. § 78B-11-124(1)(b)(i) (LexisNexis 2012). A court shall vacate an arbitration award under section 78B-11-124 "if a reasonable person would conclude that an arbitrator, appointed as neutral, showed partiality or was guilty of misconduct that prejudiced the rights of any party." *DeVore v. IHC Hosps., Inc.*, 884 P.2d 1246, 1256

(Utah 1994). "Furthermore, the burden of proof falls on the movant, and the evidence of partiality must be certain and direct, not remote, uncertain, or speculative." *Id.* "[N]either an arbitrator's consistent reliance on the winning party's evidence nor the arbitrator's conclusions in the winning party's favor establish partiality." *Id*. at 1257.

¶42    The district court concluded that the arbitrator did not exhibit evident partiality in favor of Denison and that the arbitrator "conducted the arbitration process fairly and honestly and in a manner that respected and did not prejudice the substantial rights of either KGL or Denison." We agree.

¶43    First, KGL contends that the arbitrator demonstrated evident partiality by "[r]e-opening the hearing to allow the submission of additional evidence by Denison, but not KGL" and by receiving Denison's evidence despite KGL's timely objection. At most, these arguments amount to speculative allegations of partiality rather than the direct and certain evidence of partiality required to vacate an award. *See DeVore*, 884 P.2d at 1256. This is especially true given that the arbitrator ultimately "remove[d] the requirement or request in the Interim Award" for additional verification by Denison and did not consider Denison's verification between the Interim and Final Awards. Moreover, the contested verification did not pertain to Denison's entitlement to damages but only to the amount of those damages. Although it would have been preferable for the arbitrator to have refrained from requesting and receiving Denison's verification, a reasonable person would not regard the arbitrator's conduct as establishing certain and direct evidence of partiality to Denison.

¶44    Second, KGL contends that the arbitrator demonstrated evident partiality by reconsidering Denison's record evidence after KGL's objection. Again, KGL's allegation of partiality is, at best, "remote, uncertain, [and] speculative." *See DeVore*, 884 P.2d

at 1256. Indeed, it could just as easily be argued that the arbitrator reconsidered Denison's record evidence to ensure that Denison was not awarded undue damages. The facts simply do not demonstrate, and KGL has produced no direct evidence of, evident partiality with respect to the arbitrator's reconsideration of the record evidence.

¶45    Third, KGL contends that the arbitrator exhibited evident partiality when he failed to address two of KGL's change-order claims. As previously discussed, the Arbitration Agreement only required the arbitrator to issue a "reasoned award." *Supra* ¶ 28. Contrary to what KGL would have us believe, the Arbitration Agreement simply did not require the arbitrator to address all of the parties' claims and defenses, nor could the arbitrator have reasonably done so in light of the five-page limit set forth in the Arbitration Agreement. But more importantly, we are not persuaded by KGL's highly speculative allegation that the fact that the arbitrator did not explicitly address two of KGL's change-order claims demonstrates partiality, and we do not believe a reasonable person would regard the arbitrator's failure to do so as establishing certain and direct evidence of partiality to Denison. *See DeVore*, 884 P.2d at 1256.

¶46    Fourth, KGL contends that "the Arbitrator's tortured interpretation of the evidence with respect to KGL's fraud-in-the-inducement claim also demonstrates evident partiality." According to KGL, the arbitrator's factual findings on KGL's fraud in the inducement claim were directly contrary to the record evidence. KGL's argument is nothing more than a veiled attempt to have this court conduct an inappropriate review of the merits of KGL's fraud in the inducement claim. *See Allred v. Educators Mutual Ins. Ass'n of Utah*, 909 P.2d 1263, 1266 (Utah 1996) ("[W]e will not conduct a substantive review of the merits of a matter subject to arbitration."). Moreover, there is no evidence in the record to suggest that the arbitrator did anything but use his best judgment to decide the issues before him. In the

Interim Award, the arbitrator spent approximately six pages addressing KGL's fraud in the inducement claim, and the fact that the arbitrator ultimately found Denison's evidence and arguments to be more persuasive than KGL's is not proof of partiality. An adverse ruling in and of itself is not evidence of partiality. *See DeVore*, 884 P.2d at 1257.

¶47    In sum, KGL has failed to establish that the arbitrator demonstrated evident partiality. Consequently, we conclude that the district court did not err in denying KGL's motion to vacate the Final Award on this basis.

CONCLUSION

¶48    We conclude that the district court did not err in determining that the arbitrator did not exceed his authority and that he did not exhibit evident partiality. Accordingly, we affirm the district court's order confirming the Final Award.

_____